# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

| | |
|---|---|
| **DRURY PROPERTIES, LLC**<br><br>    **Plaintiffs,**<br><br>V.<br><br>**GARY FLORA, individually and<br>as executor of the Florence Flora and<br>Melvin Owen Flora estates and<br>as trustee of the Melvin Owen Flora<br>Testamentary Trust, et al.**<br><br>    **Defendants.** | **CIVIL ACTION NO. 5:15-153-KKC**<br><br><br>**OPINION AND ORDER** |

       This matter is before the Court on the defendant's motion to dismiss (DE 8) for lack of subject matter jurisdiction. The issue on this motion is whether plaintiff Drury Properties, LLC has sufficiently proved that Donald Drury, its sole member at the time the complaint was filed, changed his domicile from Kentucky to Florida in 2013. Because Drury Properties has not met its burden of proof, the motion to dismiss must be granted.

       The root of this matter is a dispute between the heirs of the late Melvin and Florence Flora. The Floras had three children: sons Gary and Bobby and daughter Barbara Flora Drury, who is now deceased. Gary is the executor of his parents' estates and is the trustee of the testamentary trust established by his father.

       The attempt to settle Melvin and Florence's estates has spawned multiple lawsuits in state court involving Gary, as executor, and certain of his sister Barbara's heirs. One of those suits made its way to the Kentucky Supreme Court,

which noted the "incredibly complicated factual pattern" of the dispute and summarized the background as follows:

> Melvin O. Flora ("Melvin Sr.") and his wife, Florence Flora, were the parents of three children—sons, Gary and Bobby, and daughter, Barbara Drury. Each executed separate Wills, with Melvin Sr. leaving all his property to his wife Florence. He died in July 2009. Florence had a Will and two subsequent Codicils. Her Will divided her estate evenly among her three children. In addition, Florence's Codicils provided for the division of the family farms with each of her three children receiving certain identified tracts. However, before her death and about a year after her husband died, Florence suffered a debilitating stroke. Not long after her stroke, on November 16, 2010, Florence executed several documents conveying all of her property to her daughter Barbara. One of the documents Florence executed was a Trust which revoked her Last Will and Codicils. Florence also signed several deeds of conveyance transferring all of the family farms to Barbara. Leslie Dean, the wife of Florence's grandson, Melvin, who is also the daughter-in-law of Barbara, is a Kentucky lawyer [and is plaintiff's lawyer in this federal case]. She was the individual who prepared these documents and counseled Florence to sign. As a result, Melvin and Leslie stood to eventually inherit all of Florence's estate, thereby excluding Florence's sons, Gary and Bobby, Barbara's brothers. Needless to say, this did not bode well for family harmony and good will.

*Drury v. Isaacs*, No. 2013-SC-000815-MR, 2014 WL 7238385, at *1 (Ky. Dec. 18, 2014)

Eventually, the Woodford District Court determined that Florence was not of sound mind at the time that she executed the trust document drafted by Dean, who was Florence's daughter-in-law and is also the plaintiff's attorney in this case. Again, that document purported to revoke Florence's last will and codicils. It also named Florence's grandson, Melvin ("Melvin K.") – attorney Dean's husband – as the estate administrator. *Id.* at *2. Florence's will and codicils were admitted to probate and, as provided in the will, Gary was appointed executor of Florence's estate. *Id.* It appears that neither Melvin Sr.'s nor Florence's estate has been settled and that both actions remain pending in probate court in Woodford County.

Despite the complexity of the family dispute, the Court has determined that this federal action involves a discrete issue involving a single piece of property. The property is owned by Drury Properties, which, at least during the times relevant to this motion, was wholly owned by Donald Drury. It appears that Donald is one of Barbara's heirs.

It also appears that the property at issue was previously owned by Melvin K. In 1994, Melvin Sr. and Flora loaned Melvin K., their grandson, $52,500.00 and the loan was secured by a mortgage on the property at issue. (DE 1-2, Mortgage.) Drury Properties asserts that the underlying note was paid in full in 2004 and there does not appear to be any dispute about that. Drury Properties also asserts that Gary – executor of Melvin Sr.'s and Flora's estates – was informed that the underlying note has been paid but that Gary will not release the mortgage.

Drury Properties asserts that Gary has violated a Kentucky statute requiring that mortgagees release a mortgage when the underlying note is paid in full. KRS § 382.365. The statute requires a lienholder to release a lien on real property within 30 days from the date that the underlying note is paid. KRS § 382.365(1).

The statute further provides for statutory damages against a lienholder who fails to comply without "good cause." The statute provides the lienholder is at first liable to the property owner in the amount of $100 per day for each day "of the violation for which good cause did not exist." KRS § 382.365(4). If the lienholder continues to fail to release the lien without good cause for 45 days after receiving written notice, then the lienholder is liable to the property owner for $500 per day for each day "for which good cause did not exist" after the 45th day from the date of the notice. KRS § 382.365(5).

Drury Properties claims statutory damages of $458,000. It calculates its damages from October 12, 2012. That is the date that Gary and Drury Properties entered into a settlement agreement through which Gary agreed to release the mortgage. (DE 1-5, Agreement.) In addition, Drury Properties asserts claims for breach of contract and fraud based on Gary's failure to comply with the terms of the settlement agreement.

In its initial complaint, Drury Properties sued only one defendant: Gary Flora, in his individual capacity and in his capacity as the executor of Melvin and Flora's estate and as trustee of the Melvin Owen Flora Testamentary Trust. Drury Properties later filed an amended complaint, naming two additional parties: Hartford Fire Insurance Company and the Estate of Florence Flora.

Drury Properties later filed a second amended complaint. In the second and most recent amended complaint, Drury Properties asserted that this Court has jurisdiction over this matter pursuant to diversity jurisdiction set forth in 28 U.S.C. § 1332. Under that statute, this Court has jurisdiction over all matters in which the amount in controversy exceeds $75,000 and is between citizens of different states. For subject matter jurisdiction to exist under this statute, complete diversity of citizenship must exist, meaning that "no party has the same citizenship as any opposing party." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 201 (6th Cir. 2001).

There is no dispute that the amount in controversy requirement is met here. The defendants jointly move to dismiss this action, however, arguing that there is not complete diversity. There is no dispute that defendant Gary Flora is deemed to be a Kentucky citizen for diversity purposes. This means that, if plaintiff Drury Properties is also deemed to be a Kentucky citizen, then complete diversity does not exist.

Federal diversity jurisdiction depends on the citizenship of the parties at the time the complaint is filed. *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003). An amended complaint, however, supersedes all prior complaints. *Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008). Thus, when a plaintiff files an amended complaint, "courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007).

Drury Properties asserts in the current complaint that it was organized in the state of Kentucky. (DE 43, Second Amended Complaint, caption, p.1.) For purposes of diversity jurisdiction, however, a limited liability company is not deemed a citizen of the place it was organized. Instead, it is deemed to have the citizenship of each of its members. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

In its complaint, Drury Properties asserts that Donald W. Drury is the sole member of Drury Properties, LLC. (DE 43, Amended Complaint, ¶ 1.) Donald testified at the hearing on this motion that, soon after filing the second amended complaint, Drury Properties transferred 99 percent of its assets to Melvin K., who is Donald's nephew and attorney Dean's husband. Donald testified that he did this because he wanted Melvin K. to have the properties. The transfer of Drury Properties' assets, however, does not affect the diversity analysis because diversity is determined at the time the complaint was filed. Thus, this Court's diversity jurisdiction depends on Donald's citizenship at the time the complaint was filed since he was the sole member of Drury Properties at that time.

The citizenship of a person is determined by his domicile. *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994). There is no question here that, until at least 2013, Donald's domicile was Kentucky.

5

Drury Properties asserts, however, that in 2013, Donald changed his domicile to Florida.

"Federal courts are courts of limited jurisdiction and the law 'presume[s] that a cause lies outside this limited jurisdiction.'" *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1064 (6th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Thus, "[w]hen the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction." *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000). Where the plaintiff's factual allegations supporting federal jurisdiction are attacked as here, "no presumptive truthfulness applies to the factual allegations." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In such situations, the Court must weigh the relevant evidence and resolve the factual disputes. *Id.*

Accordingly, Drury Properties has the burden of proving by a preponderance of the evidence that Donald changed his domicile from Kentucky to Florida in 2013. Domicile is a combination of physical presence, along with the intent to remain permanently in the chosen location. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989).

Again, there is no question that Donald was domiciled in Kentucky until at least 2013. He testified at the hearing in this matter that he was born in Kentucky in 1940. He resided there until at least 2013 in a single-story ranch home located at 140 South Hill Road, Versailles, Kentucky that he purchased in 1990.

Drury Properties presents evidence that Donald bought another piece of property in Florida in 2013. That same year, he obtained a Florida driver's license and registered to vote there. Drury Properties also submits Donald's Kentucky state

tax returns for 2013, 2014 and 2015 in which he provides a Florida mailing address and states that he moved out of Kentucky in November 2013. In addition, Drury Properties submits a 2013 declaration filed in Collier County, Florida, in which Donald states that he intends to maintain the Florida property as his permanent home. It also submits records from the Collier County property appraiser indicating that Donald received a homestead exemption from property taxes in 2014, 2015, and 2016.

At the hearing on this matter, Donald testified that he moved to Florida in 2013 to be with his nephew, Melvin K., and attorney Dean. Donald testified that he attends church in Florida and engages in activities in Florida like playing shuffleboard and bingo with neighbors. Donald testified that he uses the Kentucky home now as his "vacation home" and that he goes to Kentucky for a couple of months at a time but that he is now in Florida at least seven months a year. He testified that he intends to maintain a home in Florida.

The Court did not find Donald's testimony regarding his domicile at the time the complaint was filed credible. Donald testified that he does not rent his Kentucky residence. He testified that a friend of his may stay all night there every once in a while and does maintenance work there. Nevertheless, there is no evidence that any other person currently lives at Donald's Kentucky residence. Further, Donald testified that he does no business out of his home in Kentucky. However, in its own response brief, Drury Properties itself asserts that Donald has a real estate business in Kentucky, stating that he is in Kentucky for the purpose of "conducting real estate business at 140 South Hill Rd., Versailles, Kentucky" and for an "eviction business conducted in Kentucky." (DE 51, Response at 3, 4.) Donald testified that all of the properties involved in that business are located in Kentucky. Further, he

testified renters of his Kentucky properties send rent checks to his Kentucky residence.

Donald testified that, at some point, he moved the principal office address of Drury Properties from Kentucky to Naples, Florida. Nevertheless, he was not certain the date that occurred. His counsel Dean informed the Court that she too was not certain the date that transfer occurred and that she would have to check on that. At this point, there is no evidence in the record that Donald conducts any business in Florida or that he did so at the time the complaint was filed.

Further, Donald's Kentucky real estate business is an active one and has required his presence in the state after 2013. For example, on August 12, 2015, he filed a small claims complaint related to his business, in which he listed 140 South Hill Road as Drury Properties' address. According to the small claims affidavit, Donald signed the complaint himself in Kentucky and agreed to appear in court two weeks later, on August 26, 2015. Likewise, on June 14, 2016, Donald filed a small claims complaint in Kentucky state court listing his address as 140 South Hill Road. Again, according to the affidavit, he signed the complaint himself in Kentucky and agreed to appear in court the following month, on July 13, 2016. (DE 74-2, 74-4.)

Further, a certified copy of a state court indictment charges Donald with sexually abusing a minor in Woodford County from August 15, 2014 to September 1, 2016 (DE 74-1, Indictment.) According to the certified copy of the criminal citation in the case, Donald was arrested at the Kentucky residence on September 20, 2016. (DE 74-1, Citation.) According to the certified copy of the return of service, the Woodford County Sheriff's office served the summons on Donald in person at the Kentucky residence on October 13, 2016. (DE 74-1, Return of Service.) The summons required his presence in Kentucky state court a few weeks later, on November 2,

2016. (DE 74-1, Summons.) The certified copies of these court records are public records under Federal Rule of Evidence 803(8) and are self-authenticating under Rule 902(4). Drury Properties has not shown any reason the documents are not trustworthy.

Considering all of this evidence, the Court cannot find that Drury Properties has proved by a preponderance of the evidence that Donald changed his domicile from Kentucky to Florida in 2013. The only evidence supporting that in the record consists of or relies on Donald's own statements to that effect. This includes his driver's license, voter registration, and certificate of domicile. While these documents may have been sufficient to exempt Donald from certain taxes, this Court is not bound by the determination of taxing authorities. The Court recognizes that Donald purchased a single piece of property in Florida in 2013. But he has owned a residence in Kentucky since 1990 and owns multiple other pieces of property here. He continues to conduct business in Kentucky and there is evidence that he has maintained a consistent physical presence in Kentucky since 2013. The Court certainly believes that Donald spends time in Florida, but the Court cannot find based on the evidence in the record that he moved there in 2013 with the intention of remaining there.

The defendants also submit the certified copy of an affidavit filed in support of a search warrant for Donald's Kentucky residence. In the affidavit, Detective K.J. Ford states that a minor's parents informed him that Donald was entrusted to pick up their child from school and to keep him when the parents were unable to do so. The parents informed Detective Ford that the minor stayed all night with Donald multiple times and that, from August 2015 to September 2016, the minor and Donald "spent much of their time together." Further, the parents informed Ford that

Donald kept track of the nights the minor stayed with him on a calendars located in Donald's kitchen and office in the Kentucky residence.

Detective Ford also includes some personal observations in the affidavit. He states that he and the minor placed a recorded phone call to Donald. Further, Detective Ford personally viewed text messages between the minor and Donald and also heard audio recordings and viewed video recordings of conversations between the minor and Donald, all of which were located on the minor's phone.

Detective Ford's affidavit is a public record under Rule 803(8). *See Weinstein v. Siemens,* No. 2:07-CV-15000, 2010 WL 4825016, at *2-7 (E.D. Mich. Nov. 22, 2010); *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 556 (6th Cir. 1978) (holding that police reports containing the direct observations and recorded data of an officer in the course of his investigation "clearly are 'matters observed pursuant to duty imposed by law as to which matters there was a duty to report'" and are thus not inadmissible under the hearsay rule.) Nevertheless, Detective Ford's affidavit includes statements made by the minor and the minor's parents. These statements are themselves hearsay and there does not appear to be any applicable exception that would permit the Court to consider them. Accordingly, the Court has not considered any of the statements of the minor or the minor's parents in determining Donald's domicile after 2013.

The Court has, however, considered Detective Ford's personal observations of the recorded phone call between the minor and Donald. The Court has also considered Detective Ford's personal observations of the text communications between the minor and Donald and of the recorded conversations between the two that were contained on the minor's cell phone. Drury Properties has not shown any reason that these observations are not trustworthy. Detective Ford's summations of

the recorded phone call and contents of the minor's cell phone merely corroborate other evidence in the record that Donald has maintained a continued physical presence in Kentucky after 2013, the date he alleges he changed his domicile to Florida.

For all of these reasons, the Court hereby ORDERS as follows:

1) the defendants' motion to dismiss for lack of subject matter jurisdiction (DE 47) is GRANTED;

2) this matter is DISMISSED and STRICKEN from the Court's active docket;

3) the plaintiff's claims against the defendants are DISMISSED without prejudice;

4) all pending motions in this matter are DENIED as moot;

5) the documents filed in the record at DE 74-1 contain personal identifiers. The Clerk of the Court SHALL FILE the documents under seal. Within 7 days of the entry date of this order, the defendants SHALL FILE redacted copies of the documents and the Clerk of the Court SHALL SUBSTITUTE the redacted documents for the unredacted documents at DE 74-1; and

6) a judgment consistent with this opinion will be entered.

Dated August 22, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY